UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CLYDE A. HERSHAN,**<br><br>　　　　**Plaintiff,**<br><br>　v.<br><br>**UNUM GROUP CORPORATION, a Delaware corporation,**<br><br>　　　　**Defendants.** | Civ. No. 2:14-6120 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

　　　　Plaintiff Clyde Hershan has sued Defendant Unum Group (hereinafter, "Unum") for benefits under three disability policies. Hershan's Complaint consists of two counts: Count One is a claim under the Employment Retirement Income Security Act ("ERISA"), and Count Two is a state law breach of contract claim. This matter comes before the Court on Unum's motion to dismiss, which this Court subsequently converted into a motion for summary judgment. Unum contends that Hershan cannot prevail on his breach of contract claim because it is preempted by ERISA. Moreover, Unum moves to strike Hershan's demands for "generic damages" and a trial by jury. There was no oral argument. FED. R. CIV. P. 78(b). For the reasons set forth below, Unum's motion is **GRANTED**.

**I.　　BACKGROUND**

　　　　The following facts are undisputed unless otherwise noted. Hershan was previously employed as a radiologist at Sharlin Radiological Associates, PA (hereinafter, "Sharlin"). (Complt. at ¶1). Between 1983 and 1991, and while employed at Sharlin, Plaintiff purchased three disability policies (hereinafter, "the Policies") from one of Unum's predecessors, Provident Life Insurance (hereinafter, "Provident").

The Policies were subject to Salary Allotment Agreements (hereinafter, "the Salary Allotment Agreements") between Provident and Sharlin. (Fagan Decl. at ¶¶ 4-6). The Salary Allotment Agreements further provided that Hershan would receive a 15% discount on his premiums in exchange for Provident accepting policy premiums as billed to Sharlin. (*See* MTD, Ex. 3 at 9). Moreover, Hershan does not dispute that he would not have received a 15% discount but for the Salary Allotment Agreements between Sharlin and Provident. (MTD, Ex.2, ¶5)

In a sworn declaration, a senior underwriter for Unum explained that Sharlin "would tender the premiums for Dr. Hershan's Policies, as well as the other Sharlin Radiological employees covered by the plan, directly to Provident Life." (Fagan Decl. at ¶8). Hershan recalls that he paid premiums either to Sharlin or Provident. Hershan explains that if premiums were paid to Sharlin, "[p]resumably payment…was transmitted by Sharlin to Provident." (Hershan Cert. at c). Additionally, when Provident received an overpayment on one of the Polices, it would issue a refund to Sharlin. (Fagan Decl. at ¶9).

Hershan believes that Sharlin ceased doing business on or about October 31, 2004. (Hershan Cert. at e). In February 2005, Hershan received a letter from Provident that offered him the opportunity to continue coverage under the Policies while retaining the 15% discount, notwithstanding the fact that premiums would no longer be paid through a Sharlin Risk Group. Hershan agreed and continued to receive coverage under the Policies as an individual. (*See* MTD, Ex. 2-G). At that point Hershan began paying premiums on the Policies directly rather than through his employer.

Unum does not contest the fact that Hershan began paying premiums directly in 2005. However, it does take issue with Hershan's statement that Sharlin ceased operations on October 31, 2004. Unum argues that New Jersey did not suspend Sharlin's Professional Corporation Status until May of 2006. It also contends that Sharlin continued to have a profit sharing plan for its employees in 2007, further belying Hershan's claim that the Company dissolved in 2004. (*See* Reply, Exs. 5-6).

In January 2010, Hershan suffered an accident when a "garage door struck his forehead, causing him to fall hard on his lower right back into the garage floor." (Complt. at ¶7). On January 13, 2012, Hershan applied to Unum for lifetime disability benefits under the Policies, submitting that his 2010 injury prevents him from performing his duties as a radiologist. (Complt. at ¶5). In the early summer of 2012, Unum began paying Hershan those benefits. (*Id*. at ¶6). However, on June 26, 2013 Unum ceased paying Hershan disability benefits on the grounds that Hershan was no longer disabled under the Policies. (*Id*. at ¶7). On August 14, 2014, Unum informed Hershan that it affirmed its June 26, 2013 decision to not pay Hershan benefits. (*Id*.)

Contending that he is entitled to disability benefits under the Policies, Hershan filed this action in the Superior Court of New Jersey. Count One of the Complaint seeks relief

under ERISA, whereas Count Two is a common law claim for breach of contract. Pointing out that Hershan's ERISA claim arose under federal law, Unum filed a timely notice of removal. ECF No. 1. On October 23, 2014, Unum moved to dismiss the breach of contract claim on the grounds that it was preempted by ERISA. Unum further moved to strike Plaintiffs' demands for a jury trial and "generic damages." *See* ECF No. 5. Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Court converted Unum's motion to dismiss into a motion for summary judgment and afforded the parties an opportunity to submit additional materials in support of their positions. ECF No. 15.

## II.   MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

### A.   Are the Policies Governed by ERISA?

Unum contends that Hershan's breach of contract claim must be dismissed because it is preempted by ERISA. Unum can only prevail on this theory if it shows that the Policies are "welfare benefit plans" subject to ERISA's statutory framework. An employee welfare benefit plan governed by ERISA is a "plan, fund, or program…established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise … benefits in the event of sickness, accident, disability, death or employment…" 29 U.S.C. § 1002(1). Therefore, the Policies are governed by ERISA if they were obtained through: (1) a plan, fund, or program; (2) that is established or maintained; (3) by an employer; (4) for the purpose of providing benefits; (5) to its participants or beneficiaries. *See McCann v. Unum Provident*, 921 F.Supp.2d 353, 364-65 (D.N.J. 2013) (citing *Spillane v. AXA Fin., Inc.*, 648 F.Supp.2d 690, 695 (E.D.Pa. 2009)).

The Court finds that the Polices constitute a "plan, fund, or program." "In summary, a 'plan, fund or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* (citing

3

*Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982)). These elements are all present in this case. A reasonable person can ascertain the intended benefits as they are fully laid out in the terms of the Policies. The class of beneficiaries are the Sharlin employees who belonged to the Risk Groups. The source of funding is also identifiable. "The source of funding may be the employer, the employee, or a combination of both." *Tannenbaum v. Unum Life Ins. Co. of America*, 2006 WL 2671405, No. 03-cv-1410, *8 (E.D.Pa. Sept. 15, 2006) (citations omitted). Here, Hershan concedes that he paid premiums on the Policies, which means he is the identifiable source of funding. (Hershan Cert. at c). Finally, the procedures for paying benefits are identifiable because they are explained in the Policies.

The Policies also meet the "established or maintained by an employer" requirement. First, there appears to be no dispute that Sharlin was an "employer" as defined by ERISA.[1] Therefore, the real inquiry is whether Sharlin "established or maintained" the Policies. "In order to establish or maintain a plan, there must be 'some meaningful degree of participation by the employer in the creation or administration of the plan…'" *Weinstein v. Paul Revere Ins. Co.*, 15 F.Supp.2d 552, 559 (D.N.J. 1998) (citations omitted). Here, Sharlin entered into Salary Allotment Agreements that entitled Hershan and other employees in Sharlin's Risk Group to a 15% discount on their premiums (*See* MTD, Ex. 3 at 9). Moreover, the Salary Allotment Agreements provided that Provident would bill Sharlin directly for all premium payments. (*Id.*) Taking these facts together, it is apparent that Sharlin "established or maintained" the policies.

Finally, the Court finds that the Policies have the purpose of providing benefits to their participants or beneficiaries. The Policies provide for disability benefits, which is a type of benefit accounted for in ERISA's definition of an "employee welfare benefit plan." *See* 29 U.S.C. § 1002(1). Additionally, the Policies intend to provide those benefits to Hershan and other Plan participants. Therefore, the Court concludes that the Policies meet all of the requirements for being "welfare benefit plans" under ERISA.

Hershan argues that even if the Policies were once ERISA plans, they stopped being governed by ERISA once Sharlin ceased operations in October 2004. In support of his argument, Hershan notes that in February 2005 – before he injured himself or sought disability benefits – he opted to continue his coverage as an individual and pay premiums directly rather than through Sharlin. Since Sharlin no longer exists, Hershan contends, the Policies no longer involve an "employer" and are therefore no longer governed by ERISA.

The Court rejects this argument. ERISA defines an employee welfare benefit plan as any plan, fund, or program "which was heretofore or is hereafter established *or* maintained by an employer…." 29 U.S.C. § 1002(1) (emphasis added). By using

---

[1] Under ERISA, an employer is defined as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan…." 29 U.S.C. § 1002(5).

"established 'or' maintained" rather than "established 'and' maintained," the statute "allows for a situation that exists here, where an employer 'establishes' a plan, goes defunct, and many years later, the plan is still subject to ERISA." *Reber v. Provident Life & Acc. Ins. Co.*, 93 F.Supp. 2d 995, 1007 (S.D. Ind. 2000). While the Third Circuit has not addressed this issue head on, *see Leckey v. Stefano*, 263 F.3d 267, 270 (3d Cir. 2001), numerous courts have held that an employee welfare benefit plan does not lose its ERISA status merely because the employer who once established or maintained the plan subsequently goes defunct. *See, e.g., Alexander v. Provident Life and Accident Ins. Co.,* 663 F.Supp.2d 627, 637 (E.D.Tenn. 2009) (plan remained subject to ERISA notwithstanding fact that employer ceased doing business before the plaintiff's claim arose); *Leonard v. Educators Mut. Life Ins. Co.,* 620 F.Supp.2d 654, 665 (E.D.Pa. 2007) ("Because the [] insurance policy was covered by ERISA at its inception – i.e., at the time it was established – it continues to be covered by ERISA."); *Stern v. Providen Life and Accident Ins. Co.,* 295 F.Supp.2d 1321, 1327 (M.D.Fla. 2003) ("once ERISA, always ERISA").

Moreover, Hershan's argument principally relies on a line of reasoning articulated in *In re Lowenschuss*, 171 F.3d 673, 680 (9th Cir. 1999), a decision that is inapplicable to the case at bar. In *In re Lowenschuss*, the Ninth Circuit held that a pension plan may lose its ERISA status even if it was ERISA-qualified at its inception. However, *In re Lowenschuss* is inapplicable because it concerns only pension plans, whereas this case involves welfare benefit plans. *In re Stern*, 345 F.3d 1036 (9th Cir. 2003). The distinction is important because unlike welfare benefit plans – which are governed by the "established or maintained" provision discussed above – a pension plan is ERISA-qualified only "to the extent…[that the pension plan] *provides* retirement income to employees…." 29 U.S.C. § 1041 (emphasis added). Therefore, "the definition of an employee welfare benefit plan focused on the past, whereas the definition of a pension plan focused on the present." *Leonard*, 620 F.Supp.2d at 665. Because the Policies were established as ERISA welfare benefit plans, they continue to be governed by ERISA.

### B.  Does ERISA Preempt Hershan's Breach of Contract Claim?

Having found that the Policies are ERISA plans, the Court must determine whether Hershan's breach of contract claim is preempted by ERISA. Section 514(a) of ERISA provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan…." 29 U.S.C. 1144(a). "State-law claims that are subject to express preemption are displaced and thus subject to dismissal." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999) (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 639 (1985)). 514(a) has an expansive reach: "[T]he phrase 'relate to' [is] given its broad commonsense meaning, such that a state law 'relate[s] to a benefit plan in the normal sense of the phrase, if it has connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987). Because Hershan's state law breach of contract claim alleges that Unum has violated policies governed by ERISA,

it necessarily falls within Section 514(a)'s preemptive grasp.  Count Two of the Complaint is therefore **DISMISSED WITH PREJUDICE**.

### C. Can Plaintiff Maintain His Demands for Generic Damages and a Jury Trial?

Now that it has concluded that Hershan's Complaint is governed exclusively by ERISA, the Court must determine whether Hershan can still demand generic damages and a trial by jury.  First, it is well-settled that ERISA disallows extracontractual damages, including consequential or compensatory damages.  *See, e.g., DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 464-65 (3d Cir. 2003).  Instead, ERISA permits Hershan to recover benefits due to him under the terms of the Policies.  29 U.S.C. § 1132(a).  To the extent Hershan's claim for "damages" seeks extracontractual damages, it is stricken from his Complaint.  Similarly, the Court will strike Hershan's jury demand as there is no right to a trial by jury in actions filed under ERISA.  *See. e.g., Pane v. RCA Corp.*, 868 F.2d 631, 636 (3d Cir. 1989).

### III. CONCLUSION

For the foregoing reasons, Unum's motion is **GRANTED**.  An appropriate order accompanies this decision.

/s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 5, 2015**